UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPIN MYERS, | No. 2:20-cv-0153 DB P |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILIATION, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant has failed to accommodate his disability. Presently before the court is plaintiff's motion to proceed in forma pauperis (ECF No. 2) and his complaint for screening (ECF No. 1). For the reasons set forth below, the court will dismiss the complaint with leave to amend.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (ECF No. 2.) Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

1  forward it to the Clerk of the court.  Thereafter, plaintiff will be obligated for monthly payments
2  of twenty percent of the preceding month's income credited to plaintiff's prison trust account.
3  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time
4  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. §
5  1915(b)(2).

**SCREENING**

7  **I.     Legal Standards**
8       The court is required to screen complaints brought by prisoners seeking relief against a
9  governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. §
10 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims
11 that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
12 granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28
13 U.S.C. § 1915A(b)(1) & (2).
14      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
15 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
16 Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
17 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
18 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
19 pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.
20 Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
21 statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
22 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
23 Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
24      However, in order to survive dismissal for failure to state a claim a complaint must
25 contain more than "a formulaic recitation of the elements of a cause of action;" it must contain
26 factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,
27 550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the
28 allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.    Allegations in the Complaint**

Plaintiff claims the events giving rise to his claim occurred while he was incarcerated at California Health Care Facility in Stockton, California (CHCF). (ECF No. 1 at 1.) Plaintiff has named as defendants in this action, the California Department of Corrections and Rehabilitation (CDCR) and CDCR Secretary, Ralph Diaz. (Id. at 2.)

Plaintiff has provided considerable detail related to his medical history while in CDCR, particularly his seizure disorder. He has alleged that his seizures were well managed with

1 medication, but that he was not given sufficient medication upon entering CDCR. Between
2 August 11, 1989 and December 4, 1997 plaintiff had numerous seizures because he was not
3 provided with proper medication. As a result of the lack of medication, plaintiff suffered a
4 cerebrovascular accident (CVA), commonly referred to as a stroke, on January 14, 1998 and has
5 left-side paralysis and memory loss. (ECF No. 1 at 9.) After the stroke, plaintiff's physician
6 prescribed physical therapy. However, when plaintiff was returned to prison, he did not receive
7 physical therapy. In September 2006, a physician again submitted a health care services form
8 indicating that plaintiff should receive physical therapy. (ECF No. 1 at 8.) Plaintiff was given a
9 physical therapy evaluation on February 5, 2007 and informed that because so much time had
10 passed, he would not benefit from physical therapy. (ECF No. 1 at 8.)

11 Plaintiff again requested physical therapy in 2008. (ECF No. 1 at 8.) His request was
12 denied by the Medical Authorization Review (MAR) Committee with the explanation given that
13 plaintiff would not benefit from physical therapy. Plaintiff alleges that due to his injuries his
14 hand is only partially functional, therefore he cannot benefit from virtually any "Career Technical
15 Education" and vocation course offered by CDCR.

16 Plaintiff alleges that he is unable to grasp and use hand-held objects and cannot
17 communicate in writing without a typewriter or computer keyboard. (ECF No. 1 at 9.) Plaintiff
18 has further indicated that he lost the ability to read and write following the CVA, but was able to
19 relearn with help from other inmates.

20 In 2010 plaintiff met with a Deputy Commissioner for a "Life Prisoner Document
21 Hearing" to discuss factors that might be of concern at his initial parole hearing. (ECF No. 1 at
22 10.) It was noted that his vocation training was limited to vocational office services if an
23 accommodation could be made for his disabilities.

24 He states that after his meeting he was not given the opportunity to take an office services
25 vocational course or any equivalent course because of his disabilities. (ECF No. 1 at 10.)
26 Plaintiff's requests for assignment to an educational or vocational program, but was denied and
27 told that the prison would not accommodate plaintiff's inability to write by providing him with a
28 typewriter capable of one-handed operation.

Plaintiff was transferred to R.J. Donovan Correctional Facility in 2013.  (ECF No. 1 at 11.)  Shortly after his arrival he was assigned to the vocational Computer Literacy Course.  Plaintiff completed the course using a feature of his assigned computer called a "Disability Wizard," which allowed him to use single keystrokes instead of having to use multiple keys at the same time.  Plaintiff then learned that the computer literacy, though an essential skill for plaintiff because of his disability, "was not an actual 'trade' or 'vocation' by itself."

At his 2016 parole hearing plaintiff was denied parole for five years.  The commissioners recommended that plaintiff "'stay disciplinary free,' 'earn positive chronos' and learn a trade'" in order to receive a grant of parole at his next parole hearing.  Plaintiff claims that the only vocational program offered that he can physically participate in is one that he has already completed.

Plaintiff seeks a declaratory judgment that CDCR's refusal to provide plaintiff with medical and vocational rehabilitation so that he can be employed once release violated his rights under the ADA.  (ECF No. 1 at 24-25.)  He alleges that CDCR is denying him the benefit of "parole consideration" and "gainful and suitable employment."  (ECF No. 1 at 25.)  He further seeks an injunction ordering CDCR to provide plaintiff with "the Advanced Paralegal Certificate Course offered at Adams State University in Colorado, through the payment of tuition and required textbooks."  (Id.)

### III.     Does Plaintiff State a Claim Under § 1983?

Plaintiff alleges that CDCR and Secretary Diaz have failed to provide him, an individual with a disability, "an equal opportunity to participate in or benefit from, programs, services and activities" specifically, "some form of Career Technical Training, and the ability to learn and work (care for one's self) derived therefrom."  (ECF No. 1 at 21-22.)  Plaintiff further claims that prison officials' refusal to provide him with educational or vocational services have prevented him from meeting the Board of Parole Hearings' requirement that he "get a trade" and that the denial amounts to discrimination in violation of his rights.  (ECF No. 1 at 23.)

////

////

**A. Legal Standards – Americans with Disabilities Act**

Title II of the American with Disabilities Act (ADA) prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons. Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of L.A., 250 F.3d 668, 691 (9th Cir. 2001).

"Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Simmons v. Navajo County, Ariz, 609 F.3d 1011, 1021 (9th Cir. 2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); Weinrich, 114 F.3d at 978.

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

////

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")).

**B. Discussion**

Plaintiff claims prison officials violated his rights by failing to pay for a specific vocational course so that he may be found suitable for parole.

Courts have previously held that prisoners do not have an Eighth or Fourteenth Amendment right to educational, vocational, or rehabilitative programs. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (deprivation of job and educational opportunities did not amount to an Eighth Amendment violation); Rizzo v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985) (inmates had no property interest in education programing in prison and therefore failed to present a Fourteenth Amendment claim); see also Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982) ("[T]here is no constitutional right to rehabilitation."), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995)); Smith v. Lambert, 12 Fed.App'x. 570, 571-72 (9th Cir. 2001) (Inmates do not have a constitutional right to vocational training).

Additionally, there is no state law that creates a liberty interest in rehabilitative programs because participation in such programs is not statutorily required for parole suitability. Eckstrom v. Beard, No. 2:16-cv-0275 KJM AC P, 2018 WL 6335407 at *4 (E.D. Cal. Dec. 5, 2018) (citing 15 Cal. Code Regs. § 2281 (programming is one of several factors that is considered in determining suitability for parole)). Due Process is satisfied where plaintiff is present at the parole hearing, had an opportunity to be heard, and was provided a statement of reasons why parole was denied. See Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000).

The court finds that plaintiff's allegation that defendants' have refusal to pay for a paralegal program violated his rights fails to state a claim because plaintiff has no entitlement to educational or vocational training, Martin v. Oregon Department of Corrections, No. 6:15-cv-0226 PK, 2017 WL 80251 at *8 (Jan. 9, 2017  D. Oregon) (dismissing prisoner's ADA claim

7

1  because he could not show that he was otherwise entitled to be included in a vocational program
2  because prisoners do not have a guaranteed right to educational programs), and defendants are not
3  required to provide the specific accommodation plaintiff requests. Zivkovic v. S. Cal. Edison Co.,
4  302 F.3d 1080, 1089 (9th Cir. 2002) (Defendants are only required to provide a reasonable
5  accommodation, not plaintiff's requested accommodation.).

## AMENDING THE COMPLAINT

7      In any amended complaint, plaintiff must demonstrate how the conditions about which he
8  complains resulted in a deprivation of his constitutional rights. Rizzo, 423 U.S. at 370-71. Also,
9  the complaint must allege in specific terms how each named defendant is involved. Arnold v.
10 Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42
11 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's action
12 and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).
13 Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations
14 are not sufficient." Ivey, 673 F.2d at 268.

15     Plaintiff is advised that in an amended complaint he must clearly identify each defendant
16 and the action that defendant took that violated his constitutional rights. The court is not required
17 to review exhibits to determine what plaintiff's charging allegations are as to each named
18 defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The
19 charging allegations must be set forth in the amended complaint so defendants have fair notice of
20 the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in
21 support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See
22 Fed. R. Civ. P. 8(a).

23     Any amended complaint must show the federal court has jurisdiction, the action is brought
24 in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must
25 contain a request for particular relief. Plaintiff must identify as a defendant only persons who
26 personally participated in a substantial way in depriving plaintiff of a federal constitutional right.
27 Johnson, 588 F.2d at 743 (a person subjects another to the deprivation of a constitutional right if
28 ////

1  he does an act, participates in another's act or omits to perform an act he is legally required to do
2  that causes the alleged deprivation).

3   In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed.
4  R. Civ. P 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed.
5  R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or
6  occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

7   The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d
8  1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any
9  heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P.
10  84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be
11  set forth in short and plain terms, simply, concisely, and directly. See Swierkiewicz v. Sorema
12  N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system,
13  which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

14   Plaintiff is informed that the court cannot refer to a prior pleading in order to make his
15  amended complaint complete. An amended complaint must be complete in itself without
16  reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all
17  prior pleadings are superseded. Therefore, in an amended complaint, as in an original complaint,
18  each claim and the involvement of each defendant must be sufficiently alleged.

19   By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and
20  has evidentiary support for his allegations, and for violation of this rule the court may impose
21  sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

## CONCLUSION

23  1. Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 2) is granted.
24  2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is
25     assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §
26     1915(b)(1). All fees shall be collected and paid in accordance with this court's order to
27     the Director of the California Department of Corrections and Rehabilitation filed
28     concurrently herewith.

9

3. Within sixty (60) days of the date of this order plaintiff shall file an amended complaint that complies with the with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned to this case and must be labeled "First Amended Complaint."
4. The Clerk of the Court is directed to send plaintiff a copy of the civil rights complaint form.
5. Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: September 8, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB:1/Orders/Prisoner/Civil.Rights/myer0153.scrn